UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHELLEY GILLMAN,

                                    Plaintiff,

                                                        Case # 12-CV-6098-FPG

v.

                                                        DECISION AND ORDER

MERCURY PRINT PRODUCTIONS, INC.,

                                    Defendant.
_____

## INTRODUCTION

Plaintiff Shelley Gillman ("Plaintiff") commenced this action alleging discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and New York State Human Rights Law ("NYHRL"), § 290, *et seq.*   ECF No. 1.   In her Complaint ("Compl."), Plaintiff alleges that she was discharged from her employment by Mercury Print Productions ("Mercury" or "Defendant"), on the basis of her age.   Compl., ¶¶ 7-48.

Currently pending before the Court are the Defendant's Motion for Summary Judgment and Motion to Strike the Plaintiff's Opposition to Summary Judgment.   ECF Nos. 17, 35.   For the following reasons, Defendant's Motion to Strike is DENIED, and its Motion for Summary Judgment is GRANTED.

## BACKGROUND[1]

Defendant is a commercial printing service in Rochester, New York. In early 2011, Mercury's operations included Offset Press ("Offset") and On-Demand divisions. The former used offset lithographic presses and encompassed a more traditional form of printing, while the latter utilized digital presses and involved newer technology. Def. Stmt. ¶¶ 1-2[2]. Both divisions employed customer service representatives ("CSRs"), who functioned as the primary contact and source of information for current jobs for production employees, sales representatives, and customers. The CSR position required teamwork and interpersonal skills. Id., ¶ 3.

Plaintiff was hired by Mercury on August 30, 1999[3], as a "Pre-Flight" technician when she was 41 years-old. Id., ¶¶ 4-5. In June 2006, Plaintiff became a CSR in the Offset division, and reported to supervisor Christopher Young ("Young") until June 2011. Id., ¶¶ 6-7.

Sometime in June of 2011, Defendant consolidated the CSRs in the Offset and On-Demand divisions, resulting in the elimination of one CSR position. Id., ¶¶ 7-8, 16. According to Jeff Quartley ("Quartley"), Vice President of Operations for Mercury, the decision was driven by a number of factors, including the decline in demand for traditional printing, increased costs of ink and paper, poor economic environment, decreased consumer demand, and increased digital media offerings. Quartley Decl. ¶¶ 8-10[4].

Due to changes in technology and equipment, Mercury's customers began performing certain tasks in-house, and sent print jobs to Mercury that were often "print-ready," thereby diminishing the need for Mercury to rework files prior to printing. Def. Stmt. ¶ 14. By 2011,

---

[1]   The following facts are undisputed unless otherwise noted, and are viewed in the light most favorable to Plaintiff as the non-moving party.

[2]   References to "Def. Stmt." refer to ECF No. 18, the Defendant's Rule 56 Statement of Material Facts not in Dispute.

[3]   The Defendant's Statement of Material Facts (ECF No. 18) states that the Plaintiff was hired on August 30, 2009, but this is a typographical error, given that Plaintiff's Complaint states she was hired on August 30, 1999 (ECF No. 1, ¶10), and the Plaintiff testified in her deposition that she was hired in 1999 (ECF No. 17-3, at 11).

[4]   References to "Quartley Decl." refer to ECF No. 17-7, the Declaration of Jeff Quartley in support of the Defendant's Motion for Summary Judgment.

Mercury suffered significant financial losses in the first half of the year, prompting the company to increase workforce efficiency and implement cost-saving measures, including restructuring and consolidating departments and eliminating four positions. *Id.*, ¶¶ 15-16. The bindery groups for the Offset and On-Demand divisions were combined, resulting in the elimination of two positions. Those employees, however, were re-hired by Defendant in different positions. A quality control position was also eliminated, and that function was distributed among other employees. *Id.*, ¶ 17.

By June 2011, Defendant had 210 employees, 133 of whom were 40 years old or older, and five of the eight CSRs in the combined Offset and On-Demand divisions were over age 40, including one CSR that was a year older than Plaintiff. Def. Stmt. ¶¶ 19, 52.

According to Quartley and Young[5], the company examined three factors in determining which position to eliminate: customer composition; ease of distributing remaining work to the other CSRs; and CSR performance and skill set. Quartley Decl. ¶ 16; Young Decl. ¶ 6[6]. After evaluating these factors, Plaintiff's CSR position was selected for elimination on June 29, 2011.

Of the five Offset division CSRs, Mercury elected to retain Tom Booth ("Booth"), age 45, because of his high volume of accounts (approximately 400), and the difficulty in distributing his workload to other employees. Quartley Decl. ¶¶ 18-20. Plaintiff acknowledged in her deposition testimony that due to his workload, redistributing Booth's duties to another CSR

---

[5]     The Plaintiff objects to the assertions of Quartley and Young as "opinion," without a citation to any evidence or authority that would contradict Mercury's position. As such, Plaintiff's Opposition runs afoul of Local Rule of Civil Procedure 56, which requires that each statement by an opponent must be followed by a citation to admissible evidence. Throughout the remainder of this Decision and Order, where facts stated in the Defendant's Rule 56 Statement are supported by testimonial or documentary evidence, and are either not addressed or are denied with a conclusory statement by Plaintiff without reference to conflicting testimonial or documentary evidence, the Court finds such facts to be true. *See* Loc. R. Civ. P. 56(a)(2) ("Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."); *see Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992) (facts will be deemed admitted unless properly controverted by the nonmoving party).

[6]     References to "Young Dec." refer to ECF No. 17-5, the Declaration of Christopher Young in support of the Defendant's Motion for Summary Judgment.

would have been "very demanding." Gillman Dep. at 49[7].  Likewise, Mercury retained Bryan

Price ("Price"), age 35, despite his lack of seniority, because of his "superior" customer

relationship skills.  Quartley Decl. ¶ 22.  Plaintiff testified that Price had the "patience of a

saint," and "got along with his salesmen and customers."  Gillman Dep. at 51.  Plaintiff,

however, believed that Booth and Price should have been selected for termination because she

had heard that Booth was "written up several times," and felt he "had no [working] knowledge of

prepress." *Id.* at 53.  She also cited to a complaint from one of her salespeople about Price. *Id.*

at 52.  Mercury denies knowledge of either Booth or Price receiving complaints.  Quartley Decl.

¶ 33.

    With regard to Plaintiff's termination, Quartley and Young state that her workload had

decreased over time and therefore was among the easiest to transition to other CSRs.  In their

view, Plaintiff was not as familiar with newer technology as compared to her colleagues, and did

not have good teamwork and interpersonal skills.  Quartley Decl. ¶¶ 25-27; Young Decl. ¶¶ 7-9.

Plaintiff's 2007-08 Annual Review indicated weakness in the areas of seeking feedback and

constructive criticism, and being flexible and open-minded.  Comments included that Plaintiff

"sometimes has a hard time listening to others."  Brown Decl.[8], Ex. 8.  After meeting with

Young following her performance review, Plaintiff stated that she "agreed that [Young's]

perception of it was probably correct," and that she would work on listening to others and to

feedback.  Gillman Dep. at 83-84.  The following year's performance review contained the

comment, "Needs to continue to work on working with Offset team members and managers

effectively (can come across as harsh or abrasive[.])"  Brown Decl., Ex. 9.  Plaintiff again agreed

to continue working on interpersonal skills, and thought that overall, her 2008-09 Annual

---

[7]     References to "Gillman Dep." refer to ECF No. 17-3, excerpts of Plaintiff Shelly Gillman's deposition
testimony, which is attached as Exhibit 6 to the Declaration of Joseph Brown in support of the Defendant's Motion
for Summary Judgment.
[8]     References to "Brown Decl." refer to ECF No. 17-1, the Declaration of Joseph Brown in support of the
Defendant's Motion for Summary Judgment.

Review was good. Gillman Dep. at 85-86. Plaintiff's 2009-10 Annual Review showed weaknesses in the areas of seeking out new responsibilities, being flexible and open-minded, and handling information flow. Brown Decl., Ex. 10. Young noted that Plaintiff "has good ideas but doesn't always vocalize them in the best manner, and once she has decided on what her opinion of a method is, it is difficult getting her to listen to any other options or alternatives." *Id.* He further stated that she needed to work on "maintaining and expanding" her skills in technology and software, and suggested online courses through Adobe to assist. *Id.* In summary, Young commented that there was "an apparent deterioration in performance over the last year." *Id.* Plaintiff felt that portions of the performance review "came out of nowhere," and that the evaluation was "thrown together." Gillman Dep. at 88.

On May 5, 2011, Jim Mill ("Mill"), a salesperson at Mercury, e-mailed Young requesting a new CSR, stating that "something is going on with Shelley that has changed and I don't know what it is and don't have the time or location to figure it out. It is also not my job description." Young Decl., Ex. A. Prior to that, Mill complained to co-worker Steve Adolf that Plaintiff "has not been herself and often cops an attitude." *Id.*

On June 21, 2011, Mercury posted an advertisement seeking a CSR/Account Manager in the Book Division on CareerBuilder.com. According to Quartley, the posting was prompted by a rumor that an employee in that division was leaving. However, the employee did not give notice, and no interviews were ever conducted for the position. Quartley's declaration indicates that Plaintiff's position was never filled, and Plaintiff testified that she did not know whether or not her former position had been filled. Quartley Decl. ¶¶ 41-42; Gillman Dep. at 60, 66. She was, however, aware that a subsequent round of layoffs had taken place, which included CSR Bryan Price. *Id.* at 60. On March 5, 2013, Defendant eliminated 13 more positions. Def. Stmt. ¶ 58.

Plaintiff testified that no Mercury employee ever said anything to her that was derogatory with respect to age, and she did not complain to anyone at the company on the basis of age discrimination.   Gillman Dep. at 61, 93.   On July 27, 2011, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights and with the Equal Employment Opportunity Commission, and a Right to Sue Notice was issued on December 5, 2011.  Compl. ¶¶ 4-5.  This action followed.

Defendant now moves for summary judgment on the grounds that Plaintiff fails to establish circumstances giving rise to an inference of discrimination, that it had a legitimate, non-discriminatory reason for Plaintiff's termination, and that Plaintiff cannot establish pretext.  ECF No. 17-9, at 4-13.  Plaintiff has filed an Opposition to Defendant's motion after three extensions of time[9] to file her papers.  Counsel's opposing affidavit and accompanying memorandum were filed two days after the most recent deadline set by the Court had passed.  ECF Nos. 26-28, 30, 33-34.  On that basis, Defendant also moves to strike Plaintiff's Opposition, and deem all of the facts in its Rule 56 Statement of Facts as admitted.  ECF No. 35-1.

<u>DISCUSSION</u>

I.      Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

---

[9]      Plaintiff was originally represented by Christina Agola, who was suspended practicing in this court on September 13, 2013, and was later disbarred by Order of Appellate Division, Fourth Department, State of New York.  Melvin Bressler appeared on Plaintiff's behalf on December 10, 2013, ECF No. 24, and requested additional time to file his response in this matter.

*Corp.*, 475 U.S. 574 (1986).  Regarding materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  More importantly, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Thus, the Court's function in deciding a summary judgment motion is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 250.

"In assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Duse v. Int'l Business Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001) (citation omitted).  However, "[i]f the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements of the claim become immaterial and do not suffice to defeat a motion for summary judgment." *Id.*, *see also Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986) (the existence of a factual issue will not suffice to defeat a motion for summary judgment where that issue is not material to the ground of the motion).

## II.    *McDonnell Douglas* Framework

"In both ADEA and NYHRL discrimination cases where, as here, there is no direct evidence of discriminatory conduct, the three-part burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, (1973) is applied to determine whether summary judgment is appropriate." *Randall v. Kaleida Health*, No. 08-CV-925S, 2012 WL

400780, at *4 (W.D.N.Y. Feb. 7, 2012). First, a plaintiff must establish a *prima facie* case of age discrimination by showing: (1) plaintiff was at least 40 years of age at the relevant time; (2) plaintiff's job performance was satisfactory; (3) plaintiff suffered an adverse employment action such as termination; and (4) the circumstances of that adverse employment action give rise to an inference of age discrimination. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 559 (2d Cir. 1997); *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000) (describing a plaintiff's initial burden as minimal).

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant employer to give a "legitimate, nondiscriminatory" reason for the conduct. *Raspardo v. Carlone*, 770 F.3d 97, 125 (2d Cir. 2014). This burden is light, and the employer "must simply articulate an explanation that, if true, would connote lawful behavior." *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 176 (E.D.N.Y. 2011) (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998)). If the defendant offers such a reason, the presumption of discrimination resulting from the *prima facie* case "drops from the picture," and the burden shifts back to the plaintiff to provide evidence that the defendant's legitimate, nondiscriminatory reason is "a mere pretext" for discrimination. *Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000). To prevail on a claim of discrimination under the ADEA, a plaintiff must show that "but for" her age the adverse employment action would not have been taken. *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 178 (2009).

### III.    Retaliation Claim

As an initial matter, the Court notes that the Complaint makes a sole reference to a claim of retaliation under the ADEA and NYHRL. Compl. ¶ 1. The Plaintiff does not, however, allege any facts sufficient to establish a *prima facie* case of retaliation, and it therefore fails as a matter of law. *See Kessler v. Westchester Cnty. Dept. of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006)

(elements of *prima facie* retaliation claim under ADEA are: (1) plaintiff engaged in protected activity under the statute; (2) employer was aware of the protected activity; (3) employer took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action).   In addition, the Plaintiff did not exhaust her administrative remedies with regard to any claim of retaliation, *see* Brown Decl., Ex. 1 (Div. of Human Rights Complaint Form), and does not address the issue in her Opposition to Summary Judgment, therefore abandoning the claim.  S*ee Hanig v. Yorktown Cent. Sch. Dist*., 384 F. Supp. 2d 710, 723–24 (S.D.N.Y. 2005) ("Plaintiff appears to have abandoned her § 1983 claim under the Fourteenth Amendment, as she failed to oppose dismissal of that claim in her Memorandum of Law in Opposition to the present motion. Consequently, because plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed.")

For these reasons, any potential claim of retaliation that the Plaintiff attempted to raise in her Complaint is dismissed.

IV.    Motion to Strike

Defendant has also moved to strike Plaintiff's Opposition to its Motion for Summary Judgment as untimely.  ECF No. 35.  It is true that Plaintiff's submission was filed two days late, notwithstanding three prior extensions of time granted in this case.  Plaintiff's counsel offers a rather convoluted set of circumstances seeking to excuse his late filing, and requests that this matter not be dismissed on procedural grounds.  ECF No. 37, ¶¶ 1-17.  The reasons advanced by Mr. Bressler include a change in counsel (¶ 1), followed by Pacer problems (¶ 8), a computer hard drive failure (¶ 10), issues with an e-mail "spam" filter (¶ 12), and finally, that he misread his own calendar entry (¶ 15).

It is well-settled that the court, in its discretion, may modify a scheduling order "for good cause." Fed. R. Civ. P. 16(b)(4).  To establish "good cause," the party seeking the modification must "show that the deadlines [could not] reasonably be met despite [its] diligence." *Robinson v. Town of Colonie*, No. 91–CV–1355, 1993 WL 191166, at *3 (N.D.N.Y. June 3, 1993) (internal quotations marks and citation omitted); *see also Carnrite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 448 (W.D.N.Y. 1997) (counsel's "'inadvertence' or oversight is not good cause for purposes of Rule [16(b)]").  Although counsel asserts that the delay was not based on a lack of diligence, the Court is not convinced that his proffered excuse satisfies the good cause requirement of Rule 16.  Indeed, counsel acknowledges that the reason for his late opposition papers was because he had misread a notation in his calendar as Plaintiff's response being due three days after July 15, 2014, instead of on July 15, 2014.  ECF No. 37, ¶ 15.  As one court noted, "[i]f oversight alone constituted 'good cause' to modify a scheduling order, all scheduling orders would quickly become meaningless." *Bracy v. State of NY, et a*l., No. 98–CV–3308, 2001 WL 1550666, at *1 (S.D.N.Y.  Dec. 5, 2001).

While the primary consideration is whether Plaintiff can demonstrate diligence, the Court may consider other factors, including potential prejudice to the opposing party. *Kassner v. 2nd Ave. Deli., Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  Because this is a discretionary standard, the Court declines to strike Plaintiff's Opposition. Defendant has not demonstrated that it has suffered prejudice from Plaintiff's two-day delay, and in any event, the merits of Plaintiff's claim are easily resolved as she has failed to raise a genuine issue of material fact sufficient to defeat Defendant's summary judgment motion.  Defendant's Motion to Strike (ECF No. 35) is therefore denied.

IV.   Discrimination Claim

Plaintiff establishes the first three elements of her *prima facie* case: she was 53 years old at the time of her termination with satisfactory job performance. She has not, however, proffered any evidence of circumstances giving rise to an inference of age discrimination.

First, there is no evidence in the record to demonstrate that the Plaintiff was replaced, much less any evidence that she was replaced by a substantially younger individual. *Cf. D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193 (2d Cir. 2007) (hiring of individual eight years younger than plaintiff enough to support inference in plaintiff's favor). Rather, the Plaintiff's job duties were re-distributed among the remaining CSRs. *See Deebs v. ALSTOM Transp., Inc.*, 550 F. Supp. 2d 385, 390–91 (W.D.N.Y. 2008), *aff'd* 346 F. App'x 654 (2009) ("reassignment of [the plaintiff's] duties to other, younger employees does not dictate a finding that other employees were hired into the [plaintiff's] position, or that the position was effectively reinstated at any relevant time following [the plaintiff's] discharge"). There is also no evidence in the record that the job posting Plaintiff saw on CareerBuilder.com was for her old position, or was even in the same division. Mercury claims that the job posting was withdrawn, and Plaintiff admitted that she had no reason to believe that Mercury hired a CSR to fill the position referenced in the posting. Gillman Dep. at 66; Quartley Decl. ¶ 41.

Second, despite the fact that Mercury had procedures in place for handling claims of discrimination, *see* Quartley Decl., Exs. A & B (Employee Handbook, Plaintiff's acknowledgement of receipt), Plaintiff did not bring a complaint to Defendant's attention at any time. Gillman Dep. at 91-93.

Finally, five of the eight CSRs employed by Mercury were over the age of 40, including one employee that was older than Plaintiff. Significantly, Plaintiff was hired when she was 41 years old, which further undermines any inference of discrimination. *See Carlton v. Mystic*

*Transp., Inc.*, 202 F.3d 120 (2d Cir. 2000) ("When the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.") (internal quotation omitted); *accord Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316, 2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008) (stating that plaintiff's age discrimination allegations are "belied" by the fact that she was hired at the age of forty-seven).

The record in this case raises a strong inference that Plaintiff was not terminated for discriminatory reasons. Assuming, *arguendo*, that the Plaintiff were able to satisfy her burden at the *prima facie* stage – which she has not – the Defendant's decision to eliminate her position was nonetheless based on a legitimate, non-discriminatory reason, and the Plaintiff has failed to show that Defendant's reason was pretextual.

Defendant avers that in 2011, Mercury began consolidating and restructuring departments to mitigate losses during the first half of the year. ECF No. 17-9 at 8. "It is well settled that an employer is free to adjust its workforce for budgetary reasons, and '[a] reduction in force is a legitimate nondiscriminatory reason for termination.'" *Bailey v. Vill. of Pittsford*, 981 F. Supp. 2d 178, 182 (W.D.N.Y. 2013) (quoting *Tutko v. James River Paper Co., Inc.*, 199 F.3d 1323 (Table), 1999 WL 1024627 at *1 (2d Cir. 1999)). In response, Plaintiff contends that the motivation or business reason for reducing the work force is a question of fact for decision by a jury, and that the reduction in force was pretextual because she was the oldest person in her job description. ECF No. 34, ¶ 5; ECF No. 34-2 at 1. Both arguments fail.

It is the Plaintiff's burden to demonstrate that she was treated adversely because of discriminatory reasons. *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 94 (2d Cir. 2001). Yet the Plaintiff acknowledged that changes in technology and the economy had negatively impacted the commercial printing industry in recent years, characterizing the

decreased workload as "a financial thing," and that "customers are getting more savvy . . . they don't have to pay us if they do it right . . . ." Gillman Dep. at 28, 32. She therefore offers no proof that a budgetary constraint did not exist. Though she claims that CSRs Booth and Price should have been terminated because she heard that Booth had been written up and that Price had a complaint from a customer, a claim of discrimination cannot find support from conclusory or unsubstantiated hearsay allegations. *Jeffreys v. City of NY*, 426 F.3d 549, 554 (2d Cir. 2005). Plaintiff herself received average performance reviews dating back to 2007. Her interpersonal skills were repeatedly noted to be a concern and, despite her experience in editing and preflighting, she needed to work on maintaining and expanding her skills in new technologies and software. Brown Decl. Exs. 8 & 9; *see Blanc v. Sagem Morpho, Inc.*, No. 07–CV–3085, 2009 WL 1813236, at *16 (E.D.N.Y. June 25, 2009) (plaintiff failed to show pretext where, among other things, "Plaintiff acknowledged numerous incidents of unsatisfactory job performance"), *aff'd*, 394 F. App'x. 808 (2d Cir. 2010). Her co-workers expressed their dissatisfaction with her recent performance as well. Young Decl., Ex. A. While it is true that a reasonable jury could find that a reduction in force was a pretext for age discrimination under certain circumstances, such is not the case here. *Cf. Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219 (2d Cir. 1994) (issue of material fact existed where plaintiff was discharged as part of a purported reduction force, and within one year defendant hired a different individual who performed many of plaintiff's former duties; plaintiff applied for this new position and defendant, contrary to its own policy manual, failed to give her an interview).

Plaintiff's second point warrants little discussion, as there is simply no evidence in the record from which to conclude that Plaintiff was the oldest CSR. Defendant has submitted evidence that five individuals in Plaintiff's job title were over 40 years-old, including one that

was 54 years-old. Def. Stmt. ¶ 19. Plaintiff acknowledged in her deposition that CSR Kate Wigg was at least the same age, or possibly older than her. Gillman Dep. at 61.

For these reasons, in addition to her failure to establish a *prima facie* case, the Plaintiff has produced no evidence from which a jury could rationally find that the Defendant's non-discriminatory reason was pretextual, and the Defendant is therefore entitled to summary judgment.

## CONCLUSION

For all of the foregoing reasons, the Defendant's Motion to Strike (ECF No. 35) is DENIED, the Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED, and this case is dismissed with prejudice. The Clerk of the Court is requested to close this case.

IT IS SO ORDERED.

DATED:        August 7, 2015
              Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court